UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

TERRY TERRIS,

    Plaintiff,

v().  Case No: 8:23-cv-1033-WFJ-AAS

SPRINT CORPORATION; T-MOBILE
US, INC.; CONNECTIVITY SOURCE;
MELISSA FITZPATRICK; JOHN DOE I;
and JOHN DOE II,

    Defendants.
_____/

## ORDER

This matter comes before the Court on the Amended Motion to Dismiss filed by Defendants Connectivity Source and Melissa Fitzpatrick (collectively, "Movants"). Dkt. 20. Plaintiff Terry Terris responded in opposition. Dkt. 22. Upon careful consideration, the Court grants-in-part and denies-in-part the motion.

## BACKGROUND

On or around May 23, 2019, Plaintiff visited Defendant Connectivity Source's store on South Missouri Avenue in Clearwater, Florida. Dkt. 1 ¶ 7. At the time, Connectivity Source was an authorized retailer of Defendant Sprint Corporation, Inc. ("Sprint"), which has since merged with Defendant T-Mobile US, Inc. ("T-Mobile"). *Id.* ¶ 4. Upon entering the store, Plaintiff approached

Defendant John Doe I, an unidentified employee, and asked to purchase four cell phones. *Id.* ¶¶ 7–8. Plaintiff states that though John Doe I began to assist her with the transaction, he soon told her that he could not sell her the phones. *Id.* ¶ 9. John Doe I purportedly told Plaintiff that his district manager, whom Plaintiff states was either Defendant Fitzpatrick or Defendant John Doe II, had been watching the store's surveillance video and "called and instructed [John Doe I] not to complete the transaction." *Id.* ¶ 10. John Doe I allegedly informed Plaintiff that the district manager had said that Plaintiff "*looked like the type of person who would never connect the phones*,' because she was African American." *Id.* ¶ 11 (emphasis in original).

Plaintiff states that John Doe I explained that this was not the first time that the district manager refused to sell cell phones to African American customers. *Id.* ¶ 12. According to Plaintiff, John Doe I stated that even he did not believe Plaintiff intended to connect all four cell phones to phone lines. *Id.* ¶ 13. Nevertheless, John Doe I allegedly took Plaintiff's existing cell phone and typed a message in the phone's notes application instructing Plaintiff to go to Connectivity Source's nearby Largo location, because "*they are prejudice* [sic] *here*." *Id.* ¶ 14 (emphasis in original).

After leaving the South Missouri Avenue store, Plaintiff visited Connectivity Source's Largo location. *Id.* ¶ 16. Plaintiff states that the manager of the Largo

2

store told her that African Americans are regularly refused cell phones at the South Missouri Avenue location "because that store does not sell multiple phones at one time to Black customers." *Id.* Plaintiff was ultimately able to purchase four cell phones at the Largo store. *Id.*

On May 10, 2023, Plaintiff filed a four-count Complaint against Sprint, T-Mobile, Connectivity Source, Fitzpatrick, John Doe I, and John Doe II. Dkt. 1. Counts I and II are state law claims of negligence and intentional infliction of emotional distress, respectively. *Id.* ¶¶ 20−32. Count III is a claim of racial discrimination brought pursuant to 42 U.S.C. § 1981. *Id.* ¶¶ 33−41. And in Count IV, Plaintiff brings a claim under Title II of the Civil Rights Act of 1964 for the denial of access to a public accommodation. *Id.* ¶¶ 42−48. In her prayer for relief, Plaintiff seeks to recover over $75,000 in damages. *Id.* at 14. Movants now seek dismissal of Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Dkt. 20.

## LEGAL STANDARD

"The threshold for surviving a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) is a low one." *Lopez v. Va. Win & Target Corp.*, No. 6:10-cv-1887-Orl-35KRS, 2011 WL 13174851, at *2 (M.D. Fla. Mar. 18, 2011) (citation omitted). To withstand dismissal, a plaintiff must plead sufficient facts to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

3

(2009). This standard does not require detailed factual allegations but demands more than an unadorned accusation. *Id.* A plaintiff's complaint must also "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In evaluating the sufficiency of a complaint, a court accepts well-pled factual allegations as true and views them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).

## ANALYSIS

In their present motion, Movants raise several grounds for dismissal of Plaintiff's Complaint. Concerning Plaintiff's federal claims, Movants contend that Count III fails to state a prima facie case of racial discrimination under § 1981. Dkt. 20 at 2−6. Movants further assert that Count IV fails because no private right of action for monetary damages exists under Title II. *Id.* at 6−7. As for Plaintiff's state law claims of negligence and intentional infliction of emotional distress, Movants aver that both Counts I and II fail because they are derivative of Plaintiff's insufficient § 1981 and Title II claims. *Id.* at 8. The Court considers Movant's assertions in turn.

### I.    Federal Claims

As an initial matter, Plaintiff concedes that she cannot recover monetary damages under Title II. Dkt. 22 at 5−6. She therefore does not oppose the dismissal

of Count IV. *Id.* With no private right of action for monetary damages under Title II, the Court agrees that Count IV is due to be dismissed.

This leaves the Court to consider the sufficiency of Plaintiff's § 1981 claim alleged in Count III. Section 1981 provides a private right of action to victims of certain forms of racial discrimination. *See* 42 U.S.C. § 1981. In the case of non-employment discrimination, a plaintiff bringing a § 1981 claim "must allege (1) [s]he is a member of a racial minority, (2) the defendant intended to racially discriminate against [her], and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Jimenez v. Wellstar Health Sys.*, 596 F.3d 1304, 1308 (11th Cir. 2010) (citation omitted).

Here, there is no dispute that Plaintiff, an African American woman, has satisfied the first element. Nor is there any dispute that Plaintiff's factual allegations sufficiently allege intentional racial discrimination for purposes of the second element. Taking Plaintiff's allegations as true at this stage, Connectivity Source employees expressly refused to sell cell phones to Plaintiff due to her race. With the first two elements satisfied, the issue becomes whether Plaintiff has satisfied the third element by alleging discrimination concerning one or more activities enumerated in § 1981.

Relevant to this suit, the activities enumerated in § 1981 include "the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42

5

U.S.C. § 1981(a). The right to make and enforce contracts includes customers' ability to engage in retail transactions. *See Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 892 (11th Cir. 2007). Having recognized that "there exists scant authority in our circuit applying § 1981 to claims brought by customers against commercial establishments," the Eleventh Circuit follows the Fifth Circuit's approach in *Arguello v. Conoco, Inc.*, 330 F.3d 355 (5th Cir. 2003), when considering § 1981 claims in the retail context. *See Kinnon*, 490 F.3d at 891; *see also Lopez v. Target Corp.*, 676 F.3d 1230, 1233 (11th Cir. 2012). Under the *Arguello* approach, a plaintiff bringing a § 1981 claim "in the retail context . . . must demonstrate the loss of an actual contract interest." *Kinnon*, 490 F.3d at 892 (quoting *Arguello*, 330 F.3d at 358); *see also Lopez*, 676 F.3d at 1234 (same). This requires a plaintiff to show that the exercise of her contractual rights was "in some way thwarted," such that she "was actually denied the ability to either make, perform, enforce, modify, or terminate a contract." *Kinnon*, 490 F.3d at 892 (quoting *Arguello*, 330 F.3d at 359, 359 n.5).

Here, Movants assert that Plaintiff cannot make this showing because she "was eventually able to purchase the phones and complete the transaction" at Connectivity Source's Largo location. Dkt. 20 at 5. Relying on *Lopez* and *Lester v. "B"ing the Best, Inc.*, No. 09-81525-CIV, 2010 WL 4942835 (S.D. Fla. Nov. 30, 2010), Movants contend that "[a] delay to the transaction is not an interference

with an actual contract interest as long as the retail transaction occurs with the same company." Dkt. 20 at 3. In response, Plaintiff asserts that Movants misread *Lopez* and *Lester*, both of which are factually distinguishable from her case. Dkt. 22 at 4. The Court agrees.

In *Lopez*, a Target cashier allegedly refused to handle a Hispanic plaintiff's purchase at check-out. 676 F.3d at 1231–32. The plaintiff moved to a different check-out lane, where another cashier allowed him to purchase his items. *Id.* at 1232. Affirming the dismissal of the plaintiff's § 1981 claim against Target, the Eleventh Circuit determined that the plaintiff had not lost an actual contract interest because he "was able to complete his transaction at *the same Target store*, buying his desired goods for the same price and using the same payment method as any other customer." *Id.* at 1234 (emphasis added). In so holding, the Eleventh Circuit noted that it was not facing "circumstances where a customer was refused service by the retail store, was required to contract on different terms, got frustrated and left the store, or was in any other way denied the right to make, enforce, or terminate a contract." *Id.* at 1235. Rather, the plaintiff "was delayed" in the process of making his purchase, which "cannot establish a § 1981 claim." *Id.*

And in *Lester*, an African American plaintiff was subjected to a similar delay at a McDonald's fast food restaurant. 2010 WL 4942835, at *1. After finding that the french fries in her to-go order were not hot, the plaintiff asked an employee

7

to exchange her french fries for fresh ones. *Id.* Though the restaurant manager began calling the plaintiff racial slurs and instructed the employee to deny plaintiff's request, the employee ultimately gave the plaintiff a new order of french fries. *Id.* In granting summary judgment for McDonald's on the plaintiff's § 1981 claim,[1] the district court explained that the plaintiff was not "actually denied the ability either to make, perform, enforce, modify, or terminate a contract[.]" *Id.* at *5. Though the court acknowledged that the manager's alleged comments were egregious, the court noted that the comments "did not prevent the formation of a contract, alter the substantive terms on which the contract was made, nor thwart the completion of the transaction." *Id.*

The factual circumstances in *Lopez* and *Lester* are materially different from those underlying Plaintiff's present § 1981 claim. While the *Lopez* and *Lester* plaintiffs were delayed in contracting at commercial establishments due to alleged racial discrimination, Plaintiff's attempt to contract was wholly denied at Connectivity Source's South Missouri Avenue store. Unlike the *Lopez* and *Lester* plaintiffs, who were able to complete their transactions at the establishments they first visited, Plaintiff allegedly had to go to a different Connectivity Source

---

[1] For purposes of the *Lester* plaintiff's § 1981 claim, the district court found that the plaintiff's to-go order at McDonald's was "analogous to a retail transaction for the purchase of any other good." *See Lester v. "B"ing the Best, Inc.*, No. 09-81525-CIV, 2010 WL 4942835, at *4 (S.D. Fla. Nov. 30, 2010) (citing *Kinnon v. Arcoub, Gopman & Assocs., Inc.*, 490 F.3d 886, 893 n.3 (11th Cir. 2007)).

location to find employees willing to let her make a purchase.

Importantly, "[i]n the retail context, unlike the employment context, 'the [contractual] relationship is based on a single, discrete transaction.'" *Kinnon*, 490 F.3d at 892 (alteration in original) (quoting *Arguello*, 330 F.3d at 360). "'[T]here is no continuing contractual relationship' after [a] transaction has been terminated." *Id.* at 893 (quoting *Arguello*, 330 F.3d at 360). Plaintiff's transaction at Connectivity Source's South Missouri Avenue store was terminated when Plaintiff was refused the ability to purchase cell phones. That terminated transaction is thus independent of Plaintiff's subsequent purchase of cell phones at Connectivity Source's Largo location. As Plaintiff aptly notes, *see* Dkt. 22 at 5, a contrary interpretation would permit a company's individual storefronts to discriminate against racial minorities so long as that company has at least one storefront that does engage in such discrimination. Unsurprisingly, this interpretation finds no support in the law.

Accepting her allegations as true, Plaintiff has sufficiently alleged that her right to contract was thwarted at Connectivity Source's South Missouri Avenue store. Plaintiff has therefore satisfied the third element of a prima facie § 1981 claim. With all three elements satisfied, Movants' Motion to Dismiss must be denied as to Count III.

## II. State Law Claims

Turning to Counts I and II, Movants posit that Plaintiff's negligence and intentional infliction of emotional distress claims are "derivative of her § 1981 claim and her Title II claim." Dkt. 20 at 8. According to Movants, "if the Plaintiff's § 1981 claim and her Title II claim fail, so do the derivative claims." *Id.* Given that the Court has determined that Plaintiff's § 1981 claim survives dismissal, this argument is unavailing. With no other grounds raised by Movants for the dismissal of Plaintiff's state law claims, the Court will not dismiss Counts I and II.

## CONCLUSION

Based on the foregoing, Movants' Motion to Dismiss, Dkt. 20, is **GRANTED-IN-PART** and **DENIED-IN-PART**. The motion is granted as to Count IV and denied as to Counts I, II, and III.

**DONE AND ORDERED** at Tampa, Florida, on June 27, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record