UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**TERRY TERRIS**,

    Plaintiff,

v.                                                Case No. 8:23-cv-1033-WFJ-AAS

**SPRINT CORPORATION**; **T-MOBILE US, INC.**; **CONNECTIVITY SOURCE**; **MELISSA FITZPATRICK**; **JOHN DOE I**; and **JOHN DOE II**,

    Defendants.
_____/

## ORDER

Before the Court is Defendant Connectivity Source's ("Connectivity") Motion to Compel Arbitration and to Stay or Dismiss the instant case (Dkt. 35). Plaintiff Terry Terris has responded in opposition (Dkt. 36). Upon careful consideration, the Court denies Connectivity's Motion.

## BACKGROUND

On or around May 23, 2019, Ms. Terris visited Connectivity's store on South Missouri Avenue in Clearwater, Florida ("Store One"). Dkt. 1 at 3. Ms. Terris approached John Doe I, an unidentified Connectivity employee, and asked to purchase four cell phones. *Id.* at 3. Despite his initial assistance, John Doe I eventually told Ms. Terris that he could not sell her the phones. *Id.* Ms. Terris claims

that John Doe I informed her that the district manager, either Melissa Fitzpatrick or John Doe II, had been watching Store One's surveillance video before "call[ing] and instruct[ing] [John Doe I] not to complete the transaction." *Id.* at 3–4. John Doe I further explained that the district manager said Ms. Terris "'*looked like the type of person who would never connect the phones*,' because she was an African American." *Id.* at 4 (emphasis in original).

Ms. Terris maintains that John Doe I told her that this was not the first time the district manager refused to sell phones to African American customers. *Id.* John Doe I also allegedly told Ms. Terris that even he did not believe she intended to connect all four cell phones. *Id.* Notwithstanding this apparent discrimination on John Doe I's part, Ms. Terris claims that John Doe I subsequently took her existing cell phone and typed the following message into the notes application: "*1001 W Bay Ste 104 33770 Largo Fl Go here they are prejudice here!*" *Id.* (emphasis in original).

After leaving Store One, Ms. Terris visited Connectivity's Largo location ("Store Two"). *Id.* at 5. Store Two's manager purportedly told her that African Americans are regularly refused cell phones at Store One "because that store does not sell multiple phones at one time to Black customers." *Id.* Ultimately, Ms. Terris was able to purchase all four cell phones at Store Two. *Id.*

On May 10, 2023, Ms. Terris filed a four-count Complaint against Sprint Corporation ("Sprint"), T-Mobile US, Inc. ("T-Mobile), Connectivity, Ms.

2

Fitzpatrick, John Doe I, and John Doe II. Dkt. 1. She alleged negligence (Count I), intentional infliction of emotional distress (Count II), racial discrimination in violation of 42 U.S.C. § 1981 (Count III), and denial of access to a public accommodation in violation of 42 U.S.C. § 2000a *et seq.* (Count IV). *Id.* at 6–13. Shortly thereafter, Connectivity filed a Motion to Dismiss (Dkt. 16) and an Amended Motion to Dismiss (Dkt. 20). On June 27, 2023, the Court granted Connectivity's Motion as to Count IV but denied it as to Counts I, II, and III. Dkt. 23 at 10.

On July 7, 2023, T-Mobile and Sprint filed a Motion to Compel Arbitration. Dkt. 7. The parties filed their Case Management Report three days later (Dkt. 25), and Defendant filed its Answer and Affirmative Defenses four days after that (Dkt. 27). On July 31, 2023, Connectivity filed a Notice of Joinder as to T-Mobile and Sprint's Motion to Compel Arbitration (Dkt. 30).

On August 1, 2023, Ms. Terris settled with T-Mobile and Sprint. (Dkts. 31-32). The Court therefore denied as moot the pending Motion to Compel Arbitration and directed Connectivity to file a stand-alone motion addressing its entitlement to compel arbitration if it so wished (Dkt. 34). Connectivity filed the instant Motion to Compel Arbitration on August 24, 2023.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") holds that written arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist

3

at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This reflects the strong federal policy toward resolving disputed arbitrable issues through arbitration; for, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the language itself or an allegation of waiver, delay, or a likely defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *see also Milestone v. Citrus Specialty Grp., Inc.*, No. 8:19-cv-2341-T-02JSS, 2019 WL 5887179, at *1 (M.D. Fla. Nov. 12, 2019) (stating that "[a] strong policy exists in favor of resolving disputes by arbitration"). That said, courts "are not to twist the language of the contract to achieve a result which is favored by federal policy but contrary to the intent of the parties." *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1214 (11th Cir. 2011) (citation and internal quotations omitted). And "parties will not be required to arbitrate when they have not agreed to do so." *Id.*

The Court considers the following factors when deciding whether to compel arbitration: "1) whether a valid written agreement to arbitrate exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitrate has been waived." *Williams v. Eddie Acardi Motor Co.*, No. 3:07-cv-782-J-32JRK, 2008 WL 686222, at *4 (M.D. Fla. Mar. 10, 2008) (citations omitted). When deciding whether the parties have agreed to arbitrate certain matters, courts generally apply state law principles governing the formation of contracts. *Am. Express Fin. Advisors, Inc. v.*

*Makarewicz*, 122 F.3d 936, 940 (11th Cir. 1997) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *see Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (stating that courts may decide "certain gateway matters, such as whether parties have a valid arbitration agreement at all or whether a[n] ... arbitration clause applies to a certain type of controversy").

## DISCUSSION

While the Court has significant doubts concerning whether an arbitrable issue exists in the instant case, the Court need not reach that issue—Connectivity has waived any right that it might have had to arbitration.

"The Court conducts a two-part inquiry to determine whether a party has waived its arbitration rights." *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1236 (11th Cir. 2018). The first part focuses on "the totality of the circumstances" and asks whether the nonmoving party has "substantially invoked the litigation machinery prior to demanding arbitration." *Id.* (citations and internal quotations omitted). The second part focuses on the prejudice to the nonmoving party and considers, among other things, the expense incurred by the moving party's participation in the litigation process. *Id.* (citations and internal quotations omitted). "[T]he key ingredient in the waiver analysis is fair notice to the opposing party and the District Court of a party's arbitration rights and its intent to exercise them." *Id.*

5

Here, Connectivity evinced a clear intent to litigate prior to asserting any arbitration rights. Indeed, prior to its Notice of Joinder, Connectivity filed an exhaustive Motion to Dismiss and an Amended Motion to Dismiss. After losing on three of four counts, Connectivity filed its Answer and Affirmative defenses. It then participated in negotiations with opposing counsel concerning the Case Management Report that was eventually submitted to the Court. As recently as this year, the Eleventh Circuit has found that such behavior constitutes waiver. *See Warrington v. Rocky Patel Premium Cigars, Inc.*, No. 22-12575, 2023 WL 1818920, at *2 (11th Cir. Feb. 8, 2023) (upholding a district court's waiver ruling where actions in both state and federal court had not yet proceeded to discovery but the movant had filed a motion to dismiss in federal court); *see also Gaudreau v. My Pillow, Inc.*, No. 6:21-CV-1899-CEM-DAB, 2022 WL 3098950, at *1, 6–8 (M.D. Fla. July 1, 2022) (finding waiver where the defendant answered a complaint, moved to strike an amended complaint, and answered the amended complaint before asserting its right to arbitrate). None of this, moreover, is to mention Ms. Terris' averments concerning opposing counsel's alleged representations that Connectivity had no arbitration rights. Dkt. 36 at 9. In sum, the totality of the circumstances suggests the kind of outcome-oriented practice that waiver is designed to prevent. *See Gutierrez,* 889 F.3d at 1236. It is too late for Connectivity to change course and demand arbitration now.

Due to *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022), where the Supreme Court held that courts may not "condition a waiver of the right to arbitration on a showing of prejudice[,]" there is some doubt concerning the import of prejudice in Eleventh Circuit's waiver inquiry. Notwithstanding, the Court finds that Ms. Terris was prejudiced by Connectivity's belated assertion of arbitration rights. Ms. Terris incurred financial expenses in defending Connectivity's Amended Motion to Dismiss and in participating in case management negotiations. She also had one of her claims dismissed, placing her in a less advantageous position for any future arbitration. While these facts are perhaps no longer dispositive following *Morgan*, they only serve to support Ms. Terris' position. Connectivity has waived arbitration.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1) Defendant's Motion to Compel Arbitration and Stay Proceedings (Dkt. 35) is **DENIED**.

**DONE AND ORDERED** at Tampa, Florida, on September 11, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record